## HORR *et al.* *v.* BARKER *et al.*

Where the owner of a certain number of barrels of flour on storage in a warehouse sold them all to different purchasers, giving them orders on the warehouseman, which were given by the purchasers to the warehouseman, and new receipts given to them in their own names by the latter, and entries made on his books charging the vendor, and crediting the purchasers with their respective lots: *Held*, that there was a sufficient delivery of possession without a separation of the various lots.

Where the vendor only sells a part of goods on storage, those sold, if all together and of the same mark, must be separated from the larger mass, in order to change the possession; but where *all* the goods of the vendor in the hands of a third party, are sold, the change of possession is complete by delivery of the order, taking a new receipt, and entry of the transaction on the books of the warehouseman.

The different purchasers have a right to leave the goods, so by them purchased, in one mass, subject to an apportionment between themselves of any loss.

APPEAL from the District Court of the Twelfth Judicial District, City and County of San Francisco.

This was an action for the value of one thousand three hundred and forty barrels of Gallego flour, and three hundred and twenty-four barrels of Haxall flour, of the value of twenty thousand dollars, alleged in the complaint to be unlawfully detained by the defendants.

The only question in the case, is as to the Gallego flour.

The record discloses the following facts:

On the seventeenth of October, one thousand eight hundred and fifty-four, J. R. West had, on store, at the warehouse of Tilden & Little, one thousand six hundred and eighty-two barrels of Gallego flour. West sold one thousand three hundred and twenty barrels to Horr & Dick; two hundred to McCreary & Co., and one hundred and sixty-two to Adams, Welch & Co., making, in all, the one thousand six hundred and eighty-two barrels. The sales were made by drawing orders upon Tilden & Little for the delivery of a specified number of barrels. The orders were accepted by the warehousemen, and West charged, and each purchaser credited upon the books with the number specified in each order. The flour was all of the same quality, and was all stored in the same bulk. There were no marks upon any of the barrels to designate the portion sold to each separate purchaser, and there was no separation actually made. While the property was in this condition it was converted by the defendants to their own use. Upon this state of facts, the Court below charged the jury "that in order that the plaintiffs should establish their title to the flour claimed in their complaint, if it were a portion of a large lot, all of the same kind and value, it was necessary that the particular lot to which they claimed title should have been segregated from the general mass, notwithstanding that orders calling for enough barrels to exhaust the residue may have been drawn by the original holder on the warehousemen.

The flour was proved to be worth twelve dollars per barrel. It was shown that the sheriff of the county had seized the flour under the direction of the defendants.

The jury, under the instructions of the Court below, found a verdict that plaintiffs were entitled to the possession of the Haxall flour, and that defendants were entitled to the possession of the Gallego flour.

Judgment was entered accordingly and plaintiffs appealed.

*Shafter, Park & Shafter*, for Appellants.

The question presented by the charge of the Court, and the refusal to charge, is simply whether it is necessary for several vendees of individual portions of articles in bulk, all of the same kind, marks, and value—the vendee having sold, and in terms conveyed the whole of said bulk—to separate and distingush the several portions, as between themselves, in order to protect their property against a mere stranger?

The answer to this question must be made consistent with justice, with the intention of the parties to the transaction, and with acknowledged principles of law.

That it was the intention of the parties, the one to part with, and the other to acquire the property in one thousand three

hundred and twenty barrels of flour, cannot be questioned, and this intention ought to be carried out, unless it is unlawful or impossible.

It is not unlawful, for the possession is changed as between vendor and vendee, according to all the authorities, by notice to the bailee, and still more when such bailee agrees to hold for the benefit of the vendee.

It is not only possible to carry out this intention, but to defeat it will entail a series of consequences in violation of well-settled principles.

This Court has held, in Adams, Welch & Co. v. Gorham et als., 6 Cal. R., 68, where the above one hundred and sixty-two barrels were sued for, that these warehousemen are liable for this same conversion. It is true they were held liable because they admitted by their receipt that the property was in their possession, but the gravamen of the action against them was the same as in the present case, a tortious converson.

If we cannot recover against these defendants, it must be upon the ground that the property in the flour was not in us, and it must of course have remained in West. Could we maintain a suit against West? It should seem not. He fulfilled his contract in full, when he gave the order for the flour, and he has never interfered with our right therein. No suit could be maintained by us, against him, then.

The character of the delivery necessary to vest in the vendee the property, is made to depend upon the intention of the parties; and the varying facts of the different cases are regarded as evidence, conclusive or otherwise, of such intention.

In this case, in view of the custom proved, and in view of the fact that the flour was of uniform appearance and value, there was a good delivery under the Statute of Frauds. Story's Contracts, § 792; Hollingworth v. Napier, 3 Caines R., 185; Wilkes v. Ferris, 5 Johns. R., 333.

And as against attaching-creditors of the vendor. 2 Vt., 555, Spaulding v. Austin.

And this delivery was good to all intents as between the parties, if the Court believe that such was the intention of the parties, notwithstanding there was no actual separation. Riddle v. Varnum, 20 Pick., 280; Downer v. Thompson, 6 Hill, 208.

If the warehouse had been burned, the loss would have fallen on the plaintiffs. Pleasants v. Pendleton, 6 Randolph, 473, and cases cited therein; Stanton v. Small, 3 Sand., 230.

Further, that in all the cases which may be cited against us, we believe there is this decisive difference, they present the case of a vendor retaining some interest in the "bulk" out of which the vendee is to receive a portion, while this case shows an entire extinguishment of the vendor's interest in the "bulk," and as to him terminates all questions of segregation.

*Janes, Lake & Boyd,* for Respondents.

The question in this case is, whether this charge of the Judge was correct.

The principle is elementary and familiar, "that no sale is complete, so as to vest in the vendee an immediate right of property, so long as anything remains to be done between the buyer and seller, in relation to the goods.

"The goods sold must be separated and identified by marks or numbers so as to be completely distinguished from all other goods, or from the bulk or mass with which they happen to be mixed. If they be sold by weight, or measure, or number, the specific quantity bought must be weighed, or measured, or counted, so as to be separate and distinct from all other goods." Story on Sales, § 296, and cases cited in the note.

This case comes directly within the above rule of law. West, having in the warehouse of Tilden & Little one thousand six hundred and eighty-two barrels of flour, in one lot, gives an order in favor of Horr & Dick for one thousand three hundred and twenty barrels, to be taken from the one thousand six hundred and eighty-two barrels, but is not taken, or separated, or counted, so as to be separate and distinct from the remaining three hundred and sixty-two barrels.

Until it was so separated, no title passed to the purchaser.

In other words, it was an executory contract to sell, and not a sale.

It was impossible for the plaintiffs to identify one thousand three hundred and twenty barrels out of the whole mass of one thousand six hundred and eighty-two barrels as their property, and equally so for McCreary & Co., or Adams, Welch & Co., to identify the number of barrels belonging to each, out of the remaining three hundred and sixty-two barrels as their property.

Suppose one hundred barrels of the whole pile had been destroyed by rats or fire ; whose flour would have been destroyed ? It clearly would not be in the power of either or any of the purchasers to say his one hundred barrels were, or were not, the particular barrels destroyed.

It is like the case of Rapelye *v.* McKee, 6 Cowen Rep., 250, where a smaller quantity is sold out of a larger, without any designation.

The proposition on the part of the plaintiffs is, that no segregation was necessary in order to pass the property, because there were delivery-orders given to different persons sufficient to exhaust the entire lot of one thousand six hundred and eighty-two barrels. It is a sufficient answer to say that the plaintiffs must be able to identify their own flour. It is their lesser quantity that must be separated from the larger quantity, no matter to whom that larger quantity may belong.

Besides, if their proposition is sound in regard to this lot of

flour, it must hold good in all cases, without regard to the character of the property or the quantity. So that where a merchant had made several contracts for the sale of his stock of goods sufficient in the aggregate to exhaust his entire stock, the title would pass by the contract to each purchaser, of the quantity purchased by each. Or, take the case of a cargo of flour, where several contracts have been made to sell the entire cargo in lots of one hundred barrels to numerous persons, but no delivery or separation; under the rule contended for by the plaintiffs each purchaser is vested with the title to the quantity of flour called for by his contract.

The remarks of Duer, J., in Suydam v. Jenkins, 4 Sanford Reports, 609, are directly in point in this case, where he says: "the five hundred barrels were themselves parcel of a larger quantity, and they had not been so selected and separated as to enable the plaintiffs to identify any portion of them as their property."

BURNETT, J., delivered the opinion of the Court—TERRY, C. J., concurring.

The only question in this case is, whether the charge of the Court below was correct. And the solution of this question will depend upon whether the title to the flour passed from West to the several purchasors.

The delivery by accepted orders upon the warehousemen, would have been clearly sufficient, had the property been segregated. Story on Contracts, § 792; 5 John. R., 335; 3 Caines R., 132.

If the *whole* lot had been sold to the *same* person, the delivery would have been sufficient. What difference then will it make in principle when the *whole* lot is sold to *different* persons in different parcels? Suppose that West had drawn but *one* order, directing his warehouseman to deliver so many barrels to the first, so many to the second, and so many to the third party? Would the title then have passed?

It is laid down in general terms that no sale of goods is complete so long as anything remains to be done between the buyer and seller. "The goods sold," says Mr. Justice Story, "must be separated, and identified by marks or numbers, so as to be completely distinguished from all other goods, or from the bulk or mass, with which they happen to be mixed. If they be sold by weight, or measure, or number, the specific quantity must be weighed, or measured, or counted, so as to be separate and distinct from all other similar goods." Story on Sales, § 296.

The language in which this general rule is expressed would seem to include the principle of the present case. But upon an examination of the cases put by the learned author in illustration of the rule, the precise application of it is shown not to

embrace the facts of this transaction. In the first instance put by him, the starch had to be weighed to ascertain the quantity; in the second, the skins had to be counted to see whether each bale contained the agreed number, and in the third, the ten tons of hemp had to be weighed from a mass containing thirty tons. All these cases are clearly distinguishable from this case.

When the vendor sells an entire lot of articles, not knowing the number, and at a certain price per article, then a count must necessarily be made, before the seller has done all that was *material* for him to do. So, when an entire lot is sold at so much per pound, or so many pounds out of a larger quantity, and there has been no weighing done, so as to ascertain the *quantity* in the first case, or to separate the portion sold from the larger mass, in the second instance, there is no delivery; especially, when the property *remains in the possession of the seller.*

But in this case, West had a certain number of barrels, all of the same kind, in the hands of a *third* person. When each order was drawn and accepted, and the whole number of barrels charged to West, and the proper number credited to each purchaser, there remained nothing further to be done. The further act to be done, must be *necessary*, either to ascertain the quantity or number, so that the parties may know what has to be paid by one, and received by the other, or to separate the quantity from the mass. If the further act be idle, it need not be performed. It must be material. Story on Sales, § 298. Each purchaser, in this case, knew precisely what he had to pay, and the warehousemen were responsible to each purchaser for a specified number of barrels.

The title to the entire lot had passed from West to the different purchasers; and the flour remained with Tilden & Little in the same state it would have been in, had each purchaser first separated his number of barrels from the mass, and then they had all put them together afterwards. The flour being all of the *same* kind, and the *entire* lot sold by West, there was no *practical* end to be accomplished by marking, counting, or separating. There being no choice, because of there being no difference between the barrels, the parties had the right to, let their different portions remain together, and had a loss accrued, without their fault, the same would have fallen upon each in proportion to his share of the whole. Where so many pounds of an article are sold out of a large mass, the same must be weighed, because one pound is not separated from another, but the whole mixed in one undistinguishable mass. But in this case, each barrel was separate and distinct from all the others. They were not mixed, but were easily distinguished, one from another, without weighing, measuring, or counting.

In the cases referred to by the counsel of defendants, the mass

remained in the possession of the *seller*. This was a material circumstance to show the *intention* of the parties.

The strongest case cited by defendants, is the case of Suydam *v.* Jenkins, 3 Sandford, 614. In that case, plaintiff had a receipt in store for five hundred barrels of flour, given by Gillet, the owner of a flouring-mill. At the time the receipt was given, Gillet had on hand six hundred barrels, and the five hundred barrels were not separated from the mass. And when the sheriff levied, Gillet had sold all of the six hundred but forty-six barrels. He had, however, in the meantime, manufactured other flour of the same brand, which he intended to substitute for that sold, so far as it would go. Under these circumstances, the Court held, that the title did not pass to the purchaser. But. in this case, Gillet was the manufacturer and the seller, and was not a warehouseman. It was evident, from the fact that he had sold most of the five hundred barrels, and was manufacturing more of the same brand, to supply the place of that sold, and from the other circumstances of the transaction, that the sale was an executory contract in fact.

But the case of Riddle *v.* Varnum, 20 Pick. R., 280, is a case which supports the view we have taken. The object is to ascertain the *intention* of the parties. If they intend it as an absolute transfer, then it is so, as between themselves. In the present case, there can be no doubt as to the intention of the parties. They considered it an absolute transfer, complete in every particular.

Judgment reversed, and cause remanded.