FREEMAN KINGMAN v. CHARLES HOLMQUIST.

SEPARATION, *When not Essential to Transfer Title to Vendee.*　Where a certain number of articles are sold from an ascertained lot which are identical in kind and value, a selection is unnecessary, and a separation is not essential to transfer title to the vendee.　In such a case the price being paid in full, the title will pass if it appears that the parties so intended.

*Error from Saline District Court.*

CHARLES HOLMQUIST brought an action to recover from Charles A. Kingman and *Freeman Kingman* the sum of $50, as damages for the conversion of twenty-five thousand hedge plants.　He alleged that in July, 1882, he purchased the plants from Charles A. Kingman, who was to deliver them at Salina, Kansas, on or before March, 1883, and that on or about the latter date Charles A. Kingman delivered the plants at the place of business of Freeman Kingman, at Salina, Kansas, together with a lot of other hedge plants, and notified Freeman

Kingman that the plants so delivered were the property of Holmquist. It is further alleged that when Holmquist called for the plants about the time of delivery, Freeman Kingman refused to deliver them to him, and on the contrary converted the same to his own use, well knowing that they were the property of the plaintiff. At the May Term, 1885, the cause was tried with a jury, and verdict and judgment were given in favor of *Holmquist* and against *Freeman Kingman* for $31.25. The jury made the following special findings:

"1. Was it agreed between C. A. Kingman and Freeman Kingman for Kingman & Co., that said Kingman & Co. should receive, in the spring of 1883, enough hedge plants to satisfy the account of said C. A. Kingman to Kingman & Co.? A. Yes.

"2. Were the plants delivered to Freeman Kingman or Kingman & Co. sufficient to satisfy said account of C. A. Kingman? A. No.

"3. What number of plants were delivered to Freeman Kingman, or to Kingman & Co.? A. 82,000.

"4. Were said plants delivered in one lot without any division or separation into different lots, except as they were tied in bundles of 250 plants each? A. Yes.

"5. What number, if any, of said plants, were, by the persons delivering them, intended for the plaintiff? A. 25,000.

"6. Was that number in any way marked or separated from the whole lot of plants delivered at the time, so as to show which particular plants were intended for plaintiff? A. No.

"7. Did not defendant refuse to receive and receipt for the plants delivered, except upon the account of Kingman & Co. against C. A. Kingman? A. Defendant received the plants, and then refused to receipt for them, except upon the account of Kingman & Co.

"8. When the agreement was made between the plaintiff and C. A. Kingman for 25,000 hedge plants, were they in the ground, indiscriminately mingled with a much larger number of plants? A. Yes.

"9. Were the plants delivered appropriated by Freeman Kingman, or by Kingman & Co., which? A. Kingman & Co.

"10. Was Freeman Kingman a member of the firm of Kingman & Co. when the plants were appropriated? A. Yes."

Thereupon Freeman Kingman moved for judgment upon

the special findings, and also for a new trial, both of which motions were overruled. He brings the case here.

*Garver & Bond*, for plaintiff in error.

*John Foster*, for defendant in error.

The opinion of the court was delivered by

JOHNSTON, J.: The only contention of the plaintiff in error is, that the twenty-five thousand plants purchased by Holmquist were not separated from the whole number delivered, in such a way as to transfer the title to him, and enable him to maintain an action for conversion. The hedge plants were tied up in bundles of two hundred and fifty plants each, which, so far as the record shows, were the same in quality and value. Holmquist purchased and paid for the plants, and the vendor agreed to deliver them at Kingman's place of business at Salina. He did deliver them there in accordance with his agreement, and at the same time and place he delivered fifty-seven thousand for Kingman, in part payment of an indebtedness which he owed to Kingman. The whole eighty-two thousand were delivered together to Kingman, and at that time he was informed that one hundred bundles, or twenty-five thousand, were for Holmquist, and that the remaining two hundred and twenty-eight bundles, containing fifty-seven thousand, were for himself. Kingman appropriated all of the plants to his own use, and hence this action.

We think the sale to Holmquist was complete, although the twenty-five thousand plants sold were not separated from the whole number delivered, and that the action for conversion can be maintained. It will be observed that the controversy is not with the vendor. He had received full payment, had tied the plants up in bundles, and had delivered them at the place agreed upon. By this action he intended to transfer the title to Holmquist, and he has ever since regarded and treated it as a complete sale. Nothing remained to be done by him to ascertain the quantity, quality, or price of the plants sold.

47— 36 KAS.

It is argued that because the bundles intended for Holmquist were not set apart or designated by some mark, the title did not pass. But separation could not make more certain the quantity, quality or price of the plants purchased by Holmquist. They were a part of a specific and ascertained quantity. There were three hundred and twenty-eight bundles of plants, which were uniform in the number contained in each, as well as in the quality and value. It was therefore immaterial from what part of the whole the one hundred bundles of Holmquist were taken. No possible advantage could have been gained by either party if the privilege of selection had been conferred upon him, and it is idle to dispute about the identity of articles that are equal in kind and value. Each had a right to a certain number of the whole, and either had a right to take possession of the number that belonged to him; and indeed, the circumstances under which Kingman received the plants are such that he might properly be regarded as the bailee of Holmquist. He held for Holmquist a specified number of bundles which were a portion of a quantity that was ascertained and certain, and with which the seller had nothing further to do. While the English and some of the American courts hold that in all cases the goods sold must be separated and specifically identified before the title will pass, the weight of authority in this country is that where the property sold is a part of an ascertained mass of uniform quality and value, separation is not essential, and the title to the part sold will pass to the vendee, if such appears to be the intention of the parties. This principle has been recognized by this court in a recent decision, and the authorities sustaining that view were there approved. (*Piazzek v. White*, 23 Kas. 621.)

The supreme court of Connecticut, in an action involving the title to three hundred and eighty bags of meal which had been purchased from a larger number of similar bags, considered this question, and while holding that where the articles sold from a larger number differed in quality, quantity, or

value, a separation was essential to transfer the title, stated that —

"Where the subject-matter of a sale is part of an ascertained mass of uniform quality and value, no selection is required; and in this class of cases it is affirmed by authorities of the highest character that severance is not, as a matter of law, necessary in order to vest the legal title in the vendee to the part sold. The title may and will pass if such is the clear intention of the contracting parties, and if there is no other reason than want of separation to prevent the transfer of the title." (*Chapman v. Shepard*, 39 Conn. 413.)

See also *Kimberly v. Patchin*, 19 N. Y. 330 ; *Pleasants v. Pendleton*, 6 Rand. 473; *Hurff v. Hires*, 40 N. J. L. 581; *Carpenter v. Graham*, 42 Mich. 191; *Waldron v. Chase*, 37 Me. 414; *Horr v. Barker*, 8 Cal. 603 ; Same case, 11 id. 393; *Phillips v. Ocmulgee Mills*, 55 Ga. 633; *Young v. Miles*, 20 Wis. 646 ; *Clark v. Griffith*, 24 N. Y. 595 ; *Lobdell v. Stowell*, 51 id. 70 ; *Groat v. Gile*, 51 id. 431; *Gardner v. Dutch*, 9 Mass. 426.

A further citation of cases, or an extended examination of the conflicting decisions upon this question, is unnecessary here. A very elaborate and careful review of the authorities is made by Mr. Benjamin in his treatise on Sales, in which he reaches the conclusion that when the property sold is part of a mass made up of units of unequal quality, such as cattle out of a herd, their selection being material, the decisions all hold that the title will not pass until a selection has been made; but that the weight of recent American authority sustains the proposition that when property is sold to be taken out of a specific mass of uniform quality, the title will pass at once upon the making of the contract, if that appears to be the intention of the parties. (1 Benj. Sales, §§ 469–487.) The present case falls within this authority, which we deem to be controlling, and hence there must be an affirmance of the judgment of the district court.

All the Justices concurring.