[No. 2339]

PIETRO CASSINELLI, APPELLANT, v. HUMPHREY SUPPLY COMPANY (A CORPORATION) { RESPONDENT.

[183 Pac. 523]

1. APPEAL AND ERROR—FINDINGS—CONCLUSIVENESS.
    A finding of fact based on a substantial conflict in material evidence is conclusive upon appeal.
2. APPEAL AND ERROR—FINDINGS—CONCLUSIVENESS.
    A finding based upon undisputed facts or the construction of a written instrument is not binding upon appeal.
3. SALES—ACTION FOR PURCHASE PRICE—ADMISSIBILITY OF EVIDENCE.
    In action for purchase price of hay destroyed by fire, evidence that a stick was placed in the hay to indicate amount covered by the sales agreement held immaterial on question whether hay subject to agreement was ascertained so as to pass title, where a subsequent written agreement fixed exact amount of hay sold.
4. SALES—PASSING OF TITLE—"SPECIFIC OR ASCERTAINED GOODS."
    Where all the hay in certain stacks was sold except thirty tons retained by the seller, the hay sold was "specific or ascertained goods" within uniform sales act, sec. 18, providing that the property in such goods is transferred at time the parties intend.
5. SALES—UNIFORM SALES ACT—CONSTRUCTION.
    Uniform sales act, sec. 19, prescribing several rules for ascertaining the intent of the parties as to when title passes, merely creates presumptions which give way if a contrary intent appears.

6. SALES—PASSING OF TITLE—UNIFORM SALES ACT.
Uniform sales act, sec. 19, rule 5, creating a presumption that title does not pass until the goods have been delivered, *held* inapplicable to an agreement under which certain hay was to be constructively delivered immediately after it had been measured.

7. SALES—PASSING OF TITLE—UNIFORM SALES ACT.
Uniform sales act, sec. 19, rule 1, creating a presumption that title is intended to pass where there is an unconditional contract to sell certain specific goods in a deliverable state, etc., *held* inapplicable to an agreement to sell all the hay in certain stacks except thirty tons to be retained by the seller.

8. SALES—PASSING OF TITLE—CONSTRUCTION OF CONTRACT.
A contract under which all hay in certain stacks was sold, excepting thirty tons to be retained by the seller, etc., *held* to make measurement of the hay a condition precedent to the passing of title despite the use of the words "bought" and "sold" in the contract.

9. SALES—DESTRUCTION OF GOODS—SELLER'S LIABILITY.
Under the direct provisions of uniform sales act, secs. 8, 22, the seller must bear the loss of hay covered by a sales agreement, but to which title had not passed, when it burned without the fault of either party.

10. SALES—EVIDENCE—ADMISSIBILITY.
In seller's action to recover purchase price of hay which defendant claimed had not been measured so as to pass title before it was accidentally burned, evidence that plaintiff's sons measured the hay after sales contract was executed, but before date agreed upon for measurement, *held* inadmissible to show compliance with contract.

APPEAL from Second Judicial District Court, Washoe County; *R. C. Stoddard,* Judge.

Action by Pietro Cassinelli against the Humphrey Supply Company. Judgment for defendant, and plaintiff appeals. **Affirmed.**

*Mack & Green* (A. F. Lasher, of Counsel), for Appellant:

There was a bona-fide sale of specified and ascertained property, though the quantity by which the whole purchase price was to be ascertained was not determined.

It can scarcely be denied that hay stacked in a deliverable condition, all raised and grown upon the same farm, is "fungible goods." The term "fungible" has been applied to grain, oil, and wine. Williston on Sales, sec.

159. It has also been applied to barrels of flour. Pleasants v. Pendleton, 6 Rand. 473, 18 Am. Dec. 726. So likewise to bales of cotton. Aderholt v. Embry, 78 Ala. 185; Phillips v. Acmulgee, 55 Ga. 633. It has been applied even to cattle and sheep. Walts v. Hindry, 13 Fla. 523.

Whether the transaction constituted a sale which passed the title from the seller to the buyer is simply a matter of intention of the parties. It is obvious that the intention disclosed by the record was that the buyer became the owner of the hay, leaving appellant no longer any right or title to dispose of the property to another, and no other interest in the property than a lien of an unpaid seller. Neither delivery nor the ascertainment of quantity were necessary prerequisites to the passage of title to the buyer. Williston on Sales, sec. 267.

Neither delivering, weighing, counting nor measuring of personal property is essential to the transfer of title. De Fonclear v. Shottenkirk, 3 Johns. (N. Y.) 1808; Graff v. Fitch, 58 Ill. 373. "Where the parties to a contract of sale intend a present vesting of title, the title passes at once though delivery is not to be made until later. Kneeland v. Renner, 2 Kan. App. 451; Byles v. Colier, 54 Mich. 1; Boswell v. Green, 25 N. J. Law, 390; Burt v. Dutcher, 34 N. Y. 493. When such is the intention of the parties, the sales become complete before the article sold has been weighed or measured or the price ascertained. Boswell v. Green, 25 N. J. Law, 390; Shealy v. Edwards, 73 Ala. 175; Chamblee v. McKenzie, 31 Ark. 155; Graff v. Fitch, 58 Ill. 373; Hagins v. Combs, 43 S. W. 222; Allen v. Elmore, 121 Iowa, 241.

The court erred in excluding evidence which tended to show what the intentions of the parties were with reference to the immediate transfer of title. "For the purpose of ascertaining the intention of the parties, regard shall be had to the terms of the contract, the conduct of the parties, usages of trade, and the circumstances of the case." Uniform Sales Act, Stats. 1915,

p. 199; 17 Cyc. 472, 670; 9 Ency. Ev. 377, 378, 381; Jones on Ev., sec. 455.

The court erred in refusing to admit evidence which was relevant, material and competent, and in ordering other proper evidence to be stricken from the record. The evidence offered and rejected bore directly upon the object which the parties had in view when they executed the written contract. It had a strong tendency to show that the parties intended to effect a present transfer of title by the agreement in the case. "The rule does not forbid an inquiry into the object of the parties in executing and receiving the instrument." Brick v. Brick, 98 U. S. 514; 2 Elliott on Contracts, secs. 1641, 1655.

*Cheney, Downer, Price & Hawkins,* for Respondent:

The issues raised in the case are whether at the time of the contract the hay was in a deliverable condition, whether it was delivered, whether anything remained to be done in reference thereto to pass the title from the plaintiff to the defendant, and whether it was the intention of the parties to so pass the title. The finding of the lower court was adverse to appellant. The questions of fact are not reviewable on this appeal. The only questions to be considered are, first, upon the fact as found by the court, did the title to the property and the risk of its loss pass from the seller to the buyer before it was destroyed by fire; and, second, did the court err in its rulings upon the admission of testimony and the motion to strike?

"If the terms of the bargain were not sufficient to enable a competent person to determine to what portion of the mass the bargain related, it would seem impossible, however, for the property to pass until the separation was made." Williston on Sales, secs. 158, 258.

The agreement provided that the hay was to be delivered. There had been no delivery. Delivery is a question of fact. Engemann v. Delaware L. & W. R. Co., 97 Atl. 152. "Delivery means voluntary transfer of

possession from one person to another." Uniform Sales Act, sec. 76. The contract is wholly in writing. It is to be considered by the court, and the intention of the parties is to be ascertained therefrom. Williston on Sales, sec. 262; Foster v. Rope, 111 Mass. 10; Berney v. Alexander, 178 Pac. 979. "If the contract to sell requires the seller to deliver the goods to the buyer, * * * the property does not pass until the goods have been delivered to the buyer or reached the place agreed upon." Under this section of the uniform sales act, where the contract required the goods to be delivered, the courts uniformly hold that title does not pass until there has been delivery. Conroy v. Barrett, 158 N. Y. Supp. 549; Hauptman v. Miller, 157 N. Y. Supp. 1104. This was the established principle of law before the uniform sales act was adopted. Atlanta B. S. Co. v. Vulcanite P. C. Co., 203 N. Y. 133, 96 N. E. 370; Chandler G. & M. Co. v. Shea, 213 Mass. 398, 100 N. E. 663. The hay in question never passed from the seller to the buyer. Conroy v. Barrett, 158 N. Y. Supp. 549; Hauptman v. Miller, 157 N. Y. Supp. 1104; Bondy v. Hardina, 102 N. E. 935; Barnard v. Tidrick, 152 N. W. 692.

The words "bought" and "sold" are frequently used to express a mere agreement to sell. Walti v. Gaba, 116 Pac. 963. "Not too much stress must be laid upon the use of the words 'sell' or 'buy' by the parties. These words are constantly used as meaning or including contract to sell or contract to buy." Williston on Sales, sec. 262.

The evidence objected to and stricken out was wholly immaterial. Had it been admitted, the decision would have been the same.

By the Court, DUCKER, J.:

The appellant, who was plaintiff in the court below, brought his action against the Humphrey Supply Company to recover the unpaid purchase price of 296⅚ tons of hay. The complaint alleges that at the time of the sale the hay was in a deliverable condition, and was

agreed to be delivered and was delivered in the stack at and where the same was then stacked, and nothing remained to be done with reference thereto to pass the title to defendant, and it was the intention of plaintiff and defendant to pass the title to the hay by agreement, and that the title did thereby pass from plaintiff to defendant. It is also alleged that no part of the purchase price of said hay has been paid except the sum of $500, and the remainder of the purchase price of the hay, the sum of $2,468.33 is due, owing, and unpaid. All of these allegations are denied in the answer except the payment of the sum of $500, and in the counter-claim the return of this sum is demanded.

The answer also alleged the following agreement in writing.

"No. 964.

"Humphrey Supply Company.

"Dec. 1st, 1916.

"Bought of Peter Cassinelli the following. I have sold all of my hay to Humphrey Supply Co., except about thirty tons at Ten Dollars per ton to be measured by same rule as sold to Nevada Packing one year ago, to be fed by P. Cassinelli free or we can feed ourselves, Cassinelli to furnish team and wagons.

"The above hay to be delivered at once when measured and I hereby acknowledge receipt of $500.

"His mark X    Peter Cassinelli,
"Seller.
"H. L. Nichols,
"Buyer.
"W. E. Fuhrman."

On the issues thus made the trial court found that on December 2, 1916, all the hay referred to in this action was consumed by fire and destroyed; that at the time the hay was so burned and destroyed all of said hay was owned and in the possession of the plaintiff herein; that the hay in the stacks was not in a deliverable condition at the time it was burned, and had not been delivered to, or accepted by, the defendant; that the terms of said written agreement had not been complied with

at the time the hay was burned; that the title to the hay or any of the hay referred to did not pass from the plaintiff to the defendant.

From the judgment rendered in favor of defendant and an order denying a motion for a new trial this appeal is taken.

A number of errors are assigned by appellant, and the principal one is that the court erred in finding that the hay in the stacks was not in a deliverable condition at the time it was sold, and had not been accepted by the defendant, and that the title had not passed from the plaintiff to defendant. It is insisted that such finding is not sustained by the evidence. On the other hand, respondent contends that the facts found are not reviewable here because they were found on a conflict of the evidence; and the only question we can consider in reference thereto is whether the conclusion that the title to the hay did not pass is a correct conclusion of law to be drawn from the facts found by the trial court.

1, 2. If there is a substantial conflict of the material evidence upon which the finding rests, this contention may be admitted. The question of whether the title passed depends entirely upon the intention of the parties, if the goods were specific and ascertained goods.

"If the intention is to be determined mainly from a construction of written instruments, the legal effect of which is for the court, and uncontradicted evidence, it is one for the courts." 24 R. C. L. sec. 275.

"The question is essentially one of fact; and though if the whole contract of the parties is reduced to writing this question is determined by the court, as also if the facts are so clear as to justify but one conclusion." Williston on Sales, sec. 262.

If the question is one for the court, either by reason of the construction of a written instrument or undisputed facts, this court is not bound by the findings or conclusions of the lower court, but may draw its own conclusion as to the legal effect of the written instrument or other evidence. 3 Cyc. p. 347.

The inquiry arises, therefore, as to how far the finding

of the court is based upon conflicting evidence, and necessitates a brief summary thereof.

On November 30, 1916, appellant was the owner of and in possession of two stacks of hay, situated upon his ranch near Reno, and on that day Mr. Small, representing the Humphrey Supply Company, went to appellant's ranch and entered into negotiations with him for the purchase of the hay for the compnay. The next day, Friday, December 1, appellant went to the office of respondent in Reno, and the agreement set out in the answer was executed by appellant and respondent. At the time of the execution of the agreement respondent gave appellant its check for $500. Mr. Small was present, and it was agreed between appellant and Mr. Small that they would measure the hay on the following Monday. At some time between the day the agreement was executed and the Monday following all the hay was burned through no fault of either party. This summary comprises all of the uncontradicted evidence that has any bearing upon the intention of the parties. There is also in the record the undisputed testimony of the two sons of the appellant that on December 1, at their father's instance, they measured the hay claimed to have been sold to respondent; but this evidence was retained in the record, by the ruling of the court, only for the purpose of showing the quantity of the hay, in case the court found that there had been a completed sale. The only evidence in which there is a conflict of a substantial nature is as to whether Mr. Small and appellant, when negotiating at the latter's ranch on November 30, segregated or identified the hay which respondent desired to purchase from the thirty tons which the appellant wished to retain. Appellant testified that on this occasion Small drove a stick in the stack on the east side to indicate the amount of hay he desired and the quantity reserved by appellant. Mr. Small testified that he did not put any stick in the stack and did nothing to designate the portion of the hay appellant was to keep for himself.

3. From the aforesaid ruling of the lower court on the

evidence of appellant's sons, and its judgment in favor of respondent, it is apparent that the court did not consider their testimony that they found a stick in the stack and measured from it when they measured the hay on December 1.

There is no intimation of a finding on this conflicting evidence in the findings of the trial court, nor is it mentioned in the brief oral opinion of the court incorporated in the record. Even if the stick was placed in the stack by respondents' agent, the act was, at the most, a mere estimation of the amount of hay desired, and was superseded by the written agreement which fixed the amount of hay to be taken by respondent and the amount to be retained by appellant to a definite number of tons, to be ascertained by actual measurement. The testimony of appellant and Mr. Small on this question was therefore immaterial, and a finding upon it, if made, would have been ineffective.

A consideration of the provisions of the sales act (Stats. 1915, c. 159) is necessary to a determination of the principal question involved.

We are admonished by the statute to so interpret and construe its provisions as to effectuate its general purpose to make uniform the laws of those states which enact it. Uniform Sales Act, sec. 74. Consequently a large number of the authorities cited by the appellant, having no reference to the uniform sales act, will not be considered as aids to our construction.

"It is apparent that, if these uniform acts are construed in the several states adopting them according to former local views upon analogous subjects, we shall miss the desired uniformity, and we shall erect upon the foundation of uniform language separate legal structures as distinct as were the former varying laws." Commercial Bank v. Canal Bank, 239 U. S. 520, 36 Sup. Ct. 194, 60 L. Ed. 417, Ann. Cas. 1917E, 25.

Section 76 of the act defines "goods" to "include all chattels personal other than things in action and money." By sections 17 and 18 of the act, goods are

divided into two classes—"unascertained goods" and "specific or ascertained goods."

"SEC. 17.   Where there is a contract to sell unascertained goods, no property in the goods is transferred to the buyer unless and until the goods are ascertained, but property in an undivided share of ascertained goods may be transferred as provided in section 6.

"SEC. 18.  (1) Where there is a contract to sell specific or ascertained goods, the property in them is transferred to the buyer at such time as the parties to the contract intend it to be transferred.   (2) For the purpose of ascertaining the intention of the parties, regard shall be had to the terms of the contract, the conduct of the parties, usages of trade, and the circumstances of the case."

It thus becomes important to ascertain which one of the classifications of the statute embraces the subject-matter of the controversy, for clearly, by the express prohibition of section 17, no property in the hay which was burned could have passed unless the property which respondent desired to purchase had been previously ascertained.   If the hay was specific or ascertained goods, the property could pass only at the time the parties intended it to be transferred, as provided in section 18.

4. Counsel for respondent contend that the hay was not "specific or ascertained goods," but we are of the opinion that it was.   It was in  a specified mass of two two stacks of hay which had been examined by Mr. Small on November 30, and it does not appear from the agreement or circumstances attending it that any selection as to quality or other character was to be made. From the written agreement it appears that all of the hay was included in the arrangement, except about thirty tons reserved by appellant, and its terms exclude any legitimate inference that it was the intention of the parties that either allotment was to come from any portion or section of the stacks.  We need not determine whether the hay in the stacks was fungible goods or not, within the meaning of that section of the act which

defines fungible goods to be "goods of which any unit is from its nature or by mercantile usage treated as the equivalent of any other unit." It is sufficient that the parties in their agreement treated the hay as fungible goods by making no reservation for selection from any part of the mass. Conceding for the purposes of this decision that the hay was fungible goods, it was still specific and ascertained goods, for it was all in a specified mass, and considered the same in quality and value. If appellant had sold an undivided share of it to respondent, segregation would be necessary to give each his property in severalty; but before such severance the property of each in a proportionate share of the entire mass would be no less definite and ascertained. Kimberly v. Patchin, 19 N. Y. 330, 75 Am. Dec. 334; Kingman v. Holmquist, 36 Kan. 735, 14 Pac. 168, 59 Am. Rep. 604.

Section 6 of the uniform sales act provides for the transfer of fungible goods, and as we conclude that the subject-matter of the agreement comprehends specific or ascertained goods, as designated by section 18, we must look to the intention of the parties for the residence of title when the hay was burned.

5, 6. The uniform sales act, in section 19, prescribes several rules for ascertaining the intention of parties, and counsel for respondent contend that if the goods were specific rule 5 applies.

Of course these rules are mere rules of presumption, and by the terms of the act must give way if a contrary intention appears. Rule 5 reads:

"If the contract * * * requires the seller to deliver the goods to the buyer, or at a particular place, or to pay the freight or cost of transportation to the buyer, or to a particular place, the property does not pass until the goods have been delivered to the buyer or reached the place agreed upon."

This rule is declaratory of the common law. It is based upon a theory analogous to that supporting rule 2 of section 19—something further remains to be done,

not, indeed, to put the goods in a deliverable state, but in order to carry out the bargain. Williston on Sales, par. 280.

Counsel base their contention in this respect upon the theory that the agreement obligates the appellant to deliver the goods as a condition precedent to the transfer of the property, and there was no delivery.

But it is not clear that the agreement effects such an obligation. The agreement contemplates delivery after measurement. This is plain from the language, "The above hay to be delivered at once when measured." And it is likewise clear that the delivery was intended to be made at the stack grounds, for it is apparent from the language used in the agreement, "to be fed by P. Cassinelli free or we can feed ourselves, Cassinelli to furnish the teams and wagons," that the respondent intended to feed the hay to stock directly from the stack grounds. The weakness, therefore, of respondent's contention that rule 5 applies lies in the fact that the agreement for delivery in no way changes the rule of law that in the absence of a contract, express or implied, or usage of trade to the contrary, the place of delivery is the seller's place of business, if he have one, and, if not, his residence. Uniform Sales Act, sec. 43. In the case before us the agreement merely provides for delivery at once after measurement at the stack grounds, which, under the facts of this case, constituted the appellant's place of business. The effect of the agreement in this regard is the same as if delivery had not been mentioned, but left to the implication of the law. To construe a contract of sale as vesting title to specific and identified property only on delivery to the buyer, or to a particular place, its terms evidencing such intention must be clear and explicit. "Slight evidence is, however, accepted as sufficient to show that title passes immediately on the sale, though the seller is to make a delivery." Benjamin on Sales, sec. 325.

The cases cited by counsel for respondent (Hauptman v. Miller et al., 94 Misc. Rep. 266, 157 N. Y. Supp. 1104,

and Conroy v. Barrett, 95, Misc. Rep. 247, 158 N. Y. Supp. 549), wherein rule 5 is construed, and the contract involved held to be within the terms of that rule, and which they contend support their theory that the parties intended the transfer of the property to be dependent upon delivery, do not, in our opinion, sustain it. In the former case there was no contention that the rule did not apply. This was conceded by the plaintiff, who sought to show compliance with the contract by delivery to the defendant at their place of business, and the court held on appeal that he had failed to prove such delivery. In the latter case, of the facts and the law the court said:

"The contract not only required the sellers to deliver the goods to the buyer, but it also required the sellers to deliver the articles at a particular place. The sellers having agreed to make the delivery, they were bound to see that delivery was properly made, and the title to the article remained in them until the agreement of sale and delivery had been completed."

In the instant case it is apparent that only a constructive delivery was contemplated. No physical act on the part of appellant was necessary to accomplish delivery. The hay was to be fed from the stacks to respondent's stock. Delivery under these circumstances would necessarily have been incidental to and effectuated by the measurement made by the parties. An act so inconsequential would hardly justify the inference that it was intended as the event that was to transfer the property. We think the intention of the parties as to delivery was merely to postpone it until immediately after measurement, and therefore that rule 5 has no application.

7. Counsel for appellant insist that the true rule for ascertaining the intention in this case is formulated by rule 1, which provides:

"Where there is an unconditional contract to sell specific goods, in a deliverable state, the property in the goods passes to the buyer when the contract is made, and it is immaterial whether the time of payment, or the time of delivery, or both, be postponed."

This rule is also declaratory of a common-law rule, that if the buyer or seller makes a proposition of purchase or sale, and either accepts, and the goods are in possession of the seller, and nothing remains to be done to identify them, or in any way prepare them for delivery, the sale is completed, and the property in the goods passes at once. Time of payment or delivery is immaterial. This rule establishes a presumption that the title passes when the contract is made if the goods are identified, and nothing remains to be done other than delivery of the goods and payment of the price. Williston on Sales, sec. 264.

We think that this rule is also inapplicable.

8. The private matter in the transaction is the condition as to measurement, and, on the whole, it is fairly collectible that the parties intended this requirement as essential to consummate the sale  In the written contract it is stipulated that the hay should be measured prior to delivery and by an agreed standard of measurement, "by same rule as sold to Nevada Packing one year ago."

The written contract is silent as to the time and by whom the measurement was to be made, but these factors are supplied by the understanding between Mr. Small and appellant at the time of the execution of the contract. Mr. Small testified, and it was uncontradicted by appellant, and corroborated by Mr. Nichols, that at that time appellant agreed that the hay should be measured the following Monday. It appears that Mr. Small and appellant were to participate in the measurement. Neither of the parties had waived the stipulations concerning measurement when the hay was burned. Both had the right to participate in the measurement of the hay. Delivery had been postponed by the express terms of the contract until after measurement. There was something more to be accomplished by the measurement than the mere ascertainment of the price to be paid for the hay.

It was a necessary act under the contract to separate appellant's thirty tons from the larger mass which

respondent proposed to purchase, so that the latter could be fed from the stacks to its stock without incurring the danger of feeding any portion of the hay reserved by appellant.

If respondent had contracted for all of appellant's hay in the two stacks, then it would be certain that measurement could serve no purpose except to ascertain the price to be paid.

If such was the case here, then the rule contended for by appellant, and to sustain which he has cited numerous authorities, that property in goods will pass to the buyer though the goods sold are afterwards to be weighed, measured, or counted, might apply. This rule, however, has its most frequent application when there has been a delivery, and the quantity of goods sold is yet to be ascertained to fix the price. Benjamin on Sales, secs. 418–423. In this case, however, delivery having been specially postponed until after measurement, and the former being necessary, not only to ascertain the price, but to distinguish into severalty the subject-matter of the contract so that the acts of possession and ownership mentioned in the contract might be properly exercised over it, the circumstances strongly indicate that the parties regarded measurement as essential to complete the sale. The effect of the agreement and understanding concerning measurement was to make it impossible for the buyer to take possession of the property until that had been done. The measurement was "something further to be done," as stated in Williston on Sales, supra, "not, indeed, to put the goods in a deliverable state, but in order to carry out the bargain," and to put the buyer in possession of the property.

Considerable stress is laid by counsel for appellant upon the words "bought" and "sold," used in the contract, as indicating a present sale. These terms are frequently used in executory contracts, consequently their literal meaning is not necessarily evidence of a present sale.

In Elgee Cotton Cases, 22 Wall. (U. S.) 180, 22 L. Ed. 863, the contract of sale contained this expression: "We

have, this 31st of July, 1863, sold unto Mr. C. S. Lobdell our crops of cotton," etc. The contract was held executory only:

"Not too much stress must be laid upon the use of the words 'sell' or 'buy' by the parties. These words are constantly used as meaning or including contract to sell or contract to buy." Williston on Sales, sec. 262.

We see no reason for attributing any particular significance to the buying and selling clauses of the contract.

The case of Welch v. Spies, 103 Iowa, 389, 72 N. W. 548, illustrates the distinction which may be drawn as to intention between the sale of an entire mass and a part of a larger mass from which reservations are made by the vendor. Plaintiff sold defendant not less than 1,600 nor more than 2,300 bushels of corn at so much a bushel, and received $50 of the purchase money. The corn was in two cribs, one containing 1,600 bushels intact, and the other, which had been opened, about 700 bushels. Plaintiff reserved a right to retain 200 or 300 bushels, if he needed them, and a third party was entitled to 50 bushels. The jury by its verdict found that the agreement was effectual to transfer the title to the 1,600 bushels only of corn in the crib which had not been opened. The court said the evidence to sustain the finding was ample.

In Kimberly v. Patchin, supra, 19 N. Y. 338, 75 Am. Dec. 334, the leading American case holding that, upon a sale of a specified quantity of grain, its separation from a mass indistinguishable in quality or value, in which it is included, is not necessary to pass title when the intention to do so is otherwise clearly manifested, the court recognized that in such a case it was quite possible and competent for parties to intend measurement as a condition to be performed before title vests in the purchaser. Upon this point the court said:

"Upon a simple bill of sale of gallons of oil or bushels of wheat, mixed with an ascertained and defined larger quantity, it may or may not be considered that the parties intend that the portion sold shall be measured before the purchaser becomes invested with the title. That

may be regarded as an act remaining to be done, in which both parties have a right to participate. But it is surely competent for the vendor to say in terms that he waives that right, and that the purchaser shall become at once the legal owner of the number of gallons or bushels embraced in the sale."

We hold that, under the particular facts of this case, measurement was a condition precedent in the contract to the transfer of property in the hay, and that the title had not passed to the buyer when the hay was burned.

9. When the hay was burned the risk of the loss was with the seller, for there is nothing in the agreement to place the risk on the buyer. This proposition is made a positive rule of law by the terms of the uniform sales act.

With certain exceptions not presented by the facts of this case, section 22 of the act provides:

"Unless otherwise agreed, the goods remain at the seller's risk until the property therein is transferred to the buyer; but when the property therein is transferred to the buyer, the goods are at the buyer's risk, whether delivery has been made or not."

In the absence of agreement to the contrary, the risk is with the seller, though the goods are identified, till the moment when the property is transferred. If the goods are destroyed or injured before that time, the buyer cannot be compelled to pay the price, and, if he has paid the price in advance, it may be recovered. Williston on Sales, sec. 301.

The risk not having passed to the buyer when the hay was burned without the fault of either party, the contract was avoided. This is the effect of section 8 of the uniform sales act:

"When there is a contract to sell specific goods, and subsequently, but before the risk passes to the buyer, * * * the goods wholly perish, the contract is thereby avoided."

10. We find no error in the rulings of the court excluding and striking out certain testimony. The principal

objection in this regard is to the ruling of the court in striking out the testimony of plaintiff's sons respecting measurements which they made of the hay after the contract was executed and before the date agreed for measurement. This testimony was immaterial as tending to show compliance with the contract. It was pertinent only for the purpose of tending to establish the quantity of hay in the stacks in case the court found that there was a completed sale, and it appears that the court by its ruling retained the testimony in the record for this purpose.

In view of our opinion on the merits of the case, we have deemed it unnecessary to consider respondent's motion to dismiss the appeal.

The judgment of the district court is affirmed.

SANDERS, J.: I concur.

COLEMAN, C. J.: I concur in the order.