## INTERNATIONAL COMPANY *vs.* SUN-MAID RAISIN GROWERS.

*Sale of Goods—Construction of Contract—Place of Delivery—Refusal to Accept—Damages.*

Ordinarily, subject to the question of intention, the point of shipment is the place of delivery, and at such place title passes from the seller at the moment of delivery to the carrier, and the subject of the sale is thereafter at the buyer's risk.　　p. 614

In a written contract for the sale of raisins by a fruit concern in Fresno, California, an inland city, to a Baltimore corporation, *held* that the words "F. O. B. Pacific Coast Rail Shipping Point" meant "F. O. B. Fresno," and not San Francisco, whence the raisins were to be shipped by steamer, in view especially of a telegram, of which the written contract was a confirmation, stating that the goods were sold "F. O. B. Fresno."
　　　　　　　　　　　　　　　p. 615

Under Code, art. 83, sec. 85 (Uniform Sales Act), providing that, if the buyer wrongfully neglects or refuses to accept and pay for the goods, the seller may recover, in the absence of special circumstances, the difference between the contract price and the market price at the time when the goods ought to have been accepted, it was proper to tell the jury that the measure of damages for the wrongful refusal of buyers in Baltimore to accept goods sold F. O. B. Fresno, California, was the difference between the contract price and the market value at Fresno in the latter part of November, when the goods arrived in Baltimore, and should have been accepted, provided such market price was less than the contract price.　　　　pp. 616, 617

*Decided January 13th, 1925.*

Appeal from the Superior Court of Baltimore City (STUMP, J.)

Action by the Sun-Maid Raisin Growers, a body corporate, against the International Company. From a judgment for plaintiff, defendant appeals. Affirmed.

The cause was argued before BOYD, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, BOND and PARKE, JJ.

*John M. Lyell,* with whom were *Sadtler & Lyell* on the brief, for the appellant.

*Henry Zoller, Jr.,* for the appellee.

PATTISON, J., delivered the opinion of the Court.

This is an appeal from a judgment recovered by the appellee, the Sun-Maid Raisin Growers of Fresno, California, against the appellant, The International Company of Baltimore, Maryland, in an action brought by the former against the latter upon a written contract dated August 16th, 1922, by which the defendant purchased from the plaintiff twenty-five thousand six hundred cases, twenty-five pounds to a case, "Bulk Thompsons" raisins, known as lot No. 61, at nine cents per pound.

As disclosed by the contract, the buyer requested water shipment; and the delivery line preferred by it was the Pacific Mail steamers; destination, Baltimore, Maryland, and month of shipment, "August-September."

The contract contained, among others, the following provisions:

> "Terms: F. O. B. Pacific Coast Rail Shipping Point. * * * Payment to be made against draft with documents attached in New York, Chicago or San Francisco Exchange, or equivalent.

> "Routing: Seller shall, where possible, recognize routing named by buyer, but seller has option of selecting the initial line. Should buyer divert goods while in transit without seller's consent, seller shall be relieved of all responsibility for quality and/or condition. Change in routing from rail to water shipment

(if requested) is subject to seller's confirmation. Buyer assuming freight to and charges at dock, state toll and all unloading and/or loading charges at port. On such water shipments and on shipments to be made *via* Gulf lines, the provisions of this contract shall be modified and superseded by the terms and conditions contained in the form of contract of the seller, effective June 2nd, 1919, known as Dried Fruit Association of California Water Shipment Contract; but if at any time within ten (10) days prior to final shipping date it be found impossible by reason of blockade or embargo to ship via Gulf lines, seller shall notify buyer, and in the absence of immediate instructions to ship via another route then open or to store goods for buyer's account, the seller shall be privileged to ship by any rail route at current freight rates. Should it be found impossible by reason of aforesaid causes to ship all rail, seller shall then be privileged to store and insure at buyer's expense. If goods are shipped all rail the terms and conditions of this contract shall apply; if stored, buyer agrees to pay seller's draft at two (2) days' sight, less two per cent. (2%) discount, to which shall be attached ( in addition to the weight and quality certificates provided by said water shipment contract) warehouse receipt and fire insurance certificate.

"Responsibility: Notwithstanding shipped to seller's order, goods are at risk of buyer, from and after delivery to carrier, and buyer hereby assumes responsibility as to shortage, loss, delay or damage in transit upon issuance by carrier of clean bill of lading or shipping receipt. Goods are at buyer's risk when delivered at his request to a third party."

Because of the provision of the contract that "on such water shipments * * * the provision of this contract shall be modified and superseded by the terms and conditions contained in the form of contract of the seller, effective June 2d, 1919, known as Dried Fruit Association of California Water Shipment Contracts," the plaintiff introduced in evidence the water shipment contract, as the consideration of it was

thought by the plaintiff to be essential in ascertaining the intention of the parties in the execution of the contract of sale.

In the water shipment contract are found the following provisions:

"Terms: F. O. B. dock at port named on reverse side, or F. O. B. *interior point so named.* If transported from interior point to port, buyer shall pay freight to and charges at dock, State toll, and all unloading and/or loading charges at said port.

"Responsibility: Notwithstanding shipped to seller's order, goods are at risk of buyer from and after delivery to dock for carrier and issuance by carrier of ocean bill of lading and *or if sold for shipment from interior point, shipping receipt to port of loading, either of which shall be conclusive evidence of shipment on date it bears.* Seller shall not be responsible for delay in shipment on account of postponement of sailing, or withdrawal of, or leaving of goods by vessel in which space is engaged, nor shall buyer be thereby relieved from accepting goods, provided goods are shipped by next available steamer."

The declaration alleged a breach of the contract by the defendant, in that it, after receiving and accepting a large part of the raisins so bought, refused, to the loss and damage of the plaintiff, to accept the balance, 12,567 cases, which were delivered at Baltimore, Maryland, in accordance with the terms of the contract.

The defendant, in addition to the pleas that it never promised and was never indebted as alleged, filed a plea of set-off, in which it was stated that "the defendant by contract dated August 14th, 1922, purchased of the plaintiff 4,800 cases, 25 pounds each, Soda Bleached Thompson's Raisins, known as Lot No. 59, at 8½c. per pound; upon the terms in and on said contract set forth, quality to be in accordance with the terms of the contract and with the sample submitted of lot No. 59; that said 4,800 cases of raisins were received and paid for by the defendant, but the quality thereof was

not in accordance with the terms of the contract and was greatly inferior to the sample, and the defendant demanded of the plaintiff the acceptance of the return of said 4,800 cases or to pay the defendant the damages sustained by it by reason of the plaintiff's failure to perform its part of said contract of sale, both of which the plaintiff declined to do, whereby the defendant sustained great loss and damage." Upon issues joined thereon the case proceeded to trial, and at the conclusion of the evidence the plaintiff, as well as the defendant, asked for instructions, but the court refused all of them, and in lieu thereof granted an instruction of its own. The rejection of the defendant's prayers and the granting of the court's instruction constitute the only exception before us on this appeal.

It is first urged by the defendant that the case should have been taken from the jury under its first prayer, by which the court was asked to instruct the jury that there was "no evidence legally sufficient to prove any damages properly chargeable against the defendant for its refusal to accept the 12,-567 cases of raisins, balance of lot No. 61" etc., and second, that the court's instruction should not have been granted, because, as claimed by the defendant, it improperly stated the measure of damages in the event of the defendant's liability.

As stated in the brief of the appellant, there are but two questions to be determined upon this appeal. First, was the International Company, upon the facts disclosed by the evidence, legally justified in refusing to accept the balance of raisins in Lot No. 61; and second, does the court's instruction properly state the measure of damages, if it should be held that the defendant was not so justified in refusing to accept the balance of said raisins. All other questions, it would seem, were disposed of by the verdict of the jury, upon the court's instructions, without any possible injury to the defendant.

The verdict of the jury was for the sum of $3,466.43. This amount, as stated by the defendant in its brief, "would indicate that the jury, following the instructions of the court,

* * * had allowed the plaintiff's claim based on 12,567 cases of 25 pounds each at the sale price of nine cents per pound, less an estimated market value of six cents per pound at Fresno, California, the last week in November and the first week in December, 1922, * * * and that the jury had also allowed the defendant's set-off claim for damages in substantially the net amount thereof; and substracting the latter amount from the former had given the verdict mentioned in favor of the plaintiff."

The appellant based its right to refuse acceptance of the balance of the raisins of lot No. 61 chiefly upon their late arrival in Baltimore, on the 29th day of November following the execution of the contract on the 5th day of August, 1922, caused by the delay in their shipment from San Francisco, which, as claimed by the appellant, was in consequence of the appellee's failure to comply with the terms of the contract of sale in respect to the time and place of shipment.

Lot No. 59, bought under contract of August 14th, 1922, with one half of lot No. 61, were placed upon the cars at the plants of the company between August 23 and 26th, and cleared San Francisco on steamer Columbia, September 15th, and the balance of Lot No. 61 left Fresno by rail on September 25th and 26th, 1922, and cleared San Francisco on Pacific Mail steamer Equador on October 31, 1922, and arrived, as we have said, at Baltimore on November 29th. On December 1st, 1922, two days after the arrival of the raisins in Baltimore, the appellant wrote the appellee at its Philadelphia office, complaining of the delay in the arrival of the raisins, and stating, because of such delay and the defective condition of the raisins, it would not accept them.

The claim is made by the appellant that the point from which the raisins were to be shipped in the months of August and September, or the place of their delivery at such time, was San Francisco, and that the plaintiff failed to comply with this requirement of the contract; that its failure to do so was caused by the late shipment of the raisins from Fresno, and the appellee's failure to use proper diligence in

procuring a steamer upon which they were to be transported from San Francisco to Baltimore, Maryland.

The appellee, on the other hand, contends that the point of shipment, or place of delivery, as named in the contract, was not San Francisco, but Fresno, and that it fully complied with the provisions of the contract as to the time and place of shipment, when it placed the raisins upon the cars at Fresno within the time named in the contract, and that it was in no way responsible for the delay in the shipment of the raisins from San Francisco.

The general rule is that, upon a sale F. O. B., the point of shipment is the place of delivery, and at such place title passes from the seller at the moment of delivery to the carrier, and the subject of the sale is thereafter at the buyer's risk (*Williston, Sales,* sec. 280, p. 409; *U. S.* v. *Andrews & Co.,* 207 U. S. 229, 241; *Detroit Southern R. Co.* v. *Malcomson,* 144 Mich. 172). The operation of the rule is, of course, subordinate to intention. *Standard Casing Co.* v. *California Casing Co.,* 233 N. Y. 416. And as stated in the Uniform Sales Act, section 39 of article 83 of the Code: (1) "Where there is a contract to sell specific or ascertained goods, the property in them is transferred to the buyer at such time as the parties to the contract intend it to be transferred"; and (2) "for the purpose of ascertaining the intention of the parties, regard shall be had to the terms of the contract, the conduct of the parties, usages of trade and the circumstances of the case." Certain rules are laid down in section 40 of said article to be applied (unless a different intention appears) "for ascertaining the intention of the parties as to the time at which the property in the goods is to pass to the buyer." Rule 4 provides that "where, in pursuance of a contract to sell, the seller delivers the goods to the buyer, or to a carrier or other bailee (whether named by the buyer or not), for the purpose of transmission to or holding for the buyer, he is presumed to have unconditionally appropriated the goods to the contract, except in the cases provided for in the next rule, and in section 41. This presumption is applicable,

although by the terms of the contract the buyer is to pay the price before receiving delivery of the goods, and the goods are marked with the words 'collect on delivery' or their equivalents."

In the negotiations for the sale of the raisins, it appears from the record that in answer to an offer made by the appellee relative thereto the appellant, on the 16th day of August, 1922, sent to the appellee at its Philadelphia office the following telegram, which was admitted in evidence without objection:

> "We accept lot fifty nine sixty tons thompsons soda bleached recleaned seedless raisins eight and one half cents lot sixty one three hundred twenty tons thompsons seedless recleaned without seeing sample nine cents both lots ten per cent more or less *fob Fresno* lot fifty nine August shipment lot sixty-one first half september via Pacific mail steamers to Baltimore goods in twenty-five pound boxes divide bills of lading into thousand case lots on steamers drawing on us separate drafts for each thousand cases through the merchants national bank of Baltimore two per cent. off payment ten days."

The terms of sale, as stated in the contract, executed thereafter on the same day, were "F. O. B. Pacific Coast Rail Shipping Point." Just what was meant thereby is not disclosed by the record.

Fresno, an inland city some distance from San Francisco, and the place at which the plant of the appellee company is located, is connected with San Francisco by rail and not by water, and it was by rail that the goods were to be, and in fact were, transported to San Francisco.

It may, we think, be reasonably assumed that by the term "F. O. B. Pacific Coast Rail Shipping Point" was meant "F. O. B. Fresno," especially in view of the statement in the telegram of acceptance, that the goods were sold "F. O. B. Fresno," as the subsequently executed contract was in effect a confirmation of the previously reached agreement stated in the telegram. And there is nothing, we think, in the "Water

Shipping Contract," a blank copy of which was admitted in evidence, showing a different intention of the parties.

In the last-named contract is found the expression "F. O. B. dock at port named on reverse side, or F. O. B. *interior point so named."* While reference is made to the reverse side of the contract for the ascertainment of the port or interior point named thereon, such reverse side of the contract is not found in the record; and we find nothing in the other parts of the contract inconsistent with the view we have expressed. We may add that, after a careful examination and consideration of the record, we are unable to find from the contract, the conduct of the parties, or the facts and circumstances of the case, any intention of the parties that would take the case out of the general rule above stated.

The court, we think, acted properly in rejecting the defendant's first prayer.

This brings us to the consideration of the objection urged by the appellant against the court's instruction as to the measure of damages stated therein.

It is provided in the Uniform Sales Act, section 85, article 83 of the Code, that:

(1) When the buyer wrongfully neglects or refuses to accept and pay for the goods, the seller may maintain an action for damages for non-acceptance.

(3) Where there is an available market for the goods in question, the measure of damages is, in absence of special circumstances, showing proximate damages of a greater amount, the difference between the contract price and the market or current price at the time or times when the goods ought to have been accepted.

The market price mentioned in the above statute is the market price at the place of delivery, and such price is to be determined, as stated in the statute, at the time the goods ought to have been accepted; 35 *Cyc.,* pp. 637 and 638; *Seaver* v. *Lindsay,* 233 N. Y. 272; *Standard Casing Co.* v. *California Casing Co., supra.*

The court instructed the jury that if they found for the plaintiff, "in estimating the damages, the amount awarded the plaintiff as to this lot (balance of Lot No. 61) should be the difference between the market value the latter part of November, 1922, at Fresno, and the contract price, provided the market price at Fresno appears from the evidence to have been less than the contract price."

It was at Fresno that the raisins were delivered under the contract, and it was upon their arrival, in the latter part of November, in Baltimore, that they "ought to have been accepted." We therefore fail to find any error committed by the court in its statement as to the measure of damages contained in said prayer; and as we find no reversible error in the court's rejection of any of the other prayers of the defendant, we will affirm the judgment appealed from.

*Judgment affirmed, with costs to the appellee.*