## SECOR v. CHARLES H. TOMPKINS CO.
### No. 336.

Municipal Court of Appeals for the District of Columbia.

Jan. 4, 1946.

A. M. Goldstein, of Washington, D. C., for appellant.

Helena D. Reed, Asst. U. S. Atty., of Washington, D. C. (Edward M. Curran, U. S. Atty., and John P. Burke, Asst. U. S. Atty., both of Washington, D. C., on the brief), for appellee.

Before CAYTON and HOOD, Associate Judges.

CAYTON, Associate Judge.

The controlling question on this appeal is whether loss caused by damage in transit must be borne by the vendor-consignor or the vendee-consignee.

The transaction involved terra cotta pipe of the total value of $1,582.80, sold by appellant Secor and Company, who was plaintiff below, to appellee Charles H. Tompkins Company. It is admitted that defendant paid $1,492.68 and that the unpaid balance of $90.12 represents the value of the pipe broken in transit and refused by defendant. It is that amount which is in dispute here. The case was presented in the trial court partly by a written stipulation and partly by oral and documentary evidence. It appeared from the stipulation that defendant ordered the pipe with the requirement, "delivery of the goods to be made to a railroad carrier, for the purpose of transmission to the buyer, f.o.b. cars, freight prepaid, to point of destination, Perryville, Maryland." From a "Request for Bid" which was in evidence it appeared that the seller was to furnish the pipe,

"F.O.B. cars Perryville, Md. (Freight Prepaid)."

Plaintiff shipped the merchandise from two points, one in Ohio and one in Pennsylvania (neither of which was mentioned in the bid or purchase order), in three freight cars of the Pennsylvania Railroad Company. On arrival of the cars defendant took possession of all the pipes except a few which had been broken in transit and which were of the value of $90.12, the amount here in suit. Notation of the breakage was made by the freight agent of the carrier but no formal claim for damages was made upon the carrier until after the lapse of the nine-month period prescribed in the bills of lading. Plaintiff was not notified of the breakage until more than eight months after discovery thereof. Plaintiff sued for the balance mentioned and defendant obtained an order making the Pennsylvania Railroad Company a third-party defendant in the cause. That company defended on the grounds, (1) that there was no evidence that the pipes were unbroken when shipped, and (2) that notice of claim had not been made within nine months of delivery.

The Tompkins Company defended on the ground that plaintiff was required to complete delivery at Perryville, Maryland, and, not having done so, title did not pass to the defendant, and that the loss must be borne by plaintiff.

The trial judge found for both defendants and plaintiff has appealed. Though the appeal was noted as to both defendants it has been prosecuted only as to the Tompkins Company and abandoned as to the Pennsylvania Railroad Company. Thus the appeal resolves itself into the single question as to whether in the circumstances here present the loss by breakage must be borne by shipper or by consignee.

 We start with the old and familiar general propositions that loss or damage in transit usually follows the title,[1] and that where the contract requires delivery at point of destination, title usually remains in the shipper and the risks of transportation must be borne by him.[2]

More directly applicable are the statutory provisions of the Uniform Sales Act which is in force in Maryland, where the contract was made and completed, and in this jurisdiction as well.[3] The Act, Maryland Code (1939), Vol. II, Art. 83, Sec. 19 et seq., reads in its applicable parts as follows:

"Sec. 36. (1) Where there is a contract to sell specific or ascertained goods, the property in them is transferred to the buyer at such time as the parties to the contract intend it to be transferred.

"(2) For the purpose of ascertaining the intention of the parties, regard shall be had to the terms of the contract, the conduct of the parties, usages of trade and the circumstances of the case.

"Sec. 37. Unless a different intention appears, the following are rules for ascertaining the intention of the parties as to the time at which the property in the goods is to pass to the buyer:

\* \* \* \* \*

"Rule 5. If the contract to sell requires the seller to deliver the goods to the buyer, or at a particular place, or to pay the freight or cost of transportation to the buyer, or to a particular place, the property does not pass until the goods have been delivered to the buyer or reached the place agreed upon."

 We think that applied to the facts of this case the language just quoted relieves defendant of liability. The merchandise was ordered for delivery at defendant's job site at Perryville, Maryland. The stipulation recites that plaintiff was required to ship the merchandise by freight to defendant *by a carrier not specified by purchaser,* to the point of *destination.* This language, without more, indicates an intention under Art. 83, Sec. 36 that property in the merchandise was not intended to pass to defendant until physical delivery at point of destination was accomplished. Moreover, we think that under Art. 83, Sec. 37 that intention was manifested by considerations which exactly fit Rule 5 of the Section, and which the contract in this case meets in these particulars: (1) it requires the seller to deliver the goods to the buyer, (2) at a particular place, (3) the seller to pay the freight. These considerations are plain from the stipulation of the parties. They are even more plain from the Request for Bid and the Purchase Order which were in evidence and which it was proper for the trial judge to consider

---

[1] Grant v. United States, 7 Wall. 331, 19 L.Ed. 194.

[2] Pittsburgh Provision & Packing Co. v. Cudahy Packing Co., 260 Pa. 135, 103 A. 548.

[3] Code 1940, § 28—1101 et seq.

to explain or supplement the stipulation.[4] To properly evaluate the evidence, the judge had a right to consider all these documents together.

■ Appellant relies heavily upon United States v. R. P. Andrews & Co., 207 U.S. 229, 28 S.Ct. 100, which held that as a general rule delivery by a consignor to a common carrier for account of a consignee amounts to a delivery to such consignee. But there the facts were quite different from those in the case at bar. There the arrangement to consider the freight charges as a separate item in computing the price was held to show an intention inconsistent with retention of title by the seller; here it was expressly agreed that the seller was to prepay the freight and no separate mention of freight charges was made in the price quoted. There the purchaser designated the carrier, and gave detailed instructions for delivery to a named agent for subsequent transoceanic shipment; here the seller, not the purchaser, was to select, and did select, the carrier and was charged with arranging all details of shipment. Appellant cites other cases[5] supporting the general rule that upon a sale "f.o.b., the point of shipment" title passes to the vendee at time of shipment. We point out, however, that the contract in this case provided for delivery f.o.b. the point of destination and *not* the point of origin.[6] Also we point out that neither the Andrews case nor the cases listed in footnote 5 question the right of the parties to overcome the so-called "general rule" by contract. Indeed most if not all of them recognize the intention of the parties as the true test. Nor are those decisions anywise in conflict with the statutory guides (enumerated in the Uniform Sales Act quoted earlier in this opinion) for determining the intentions of the parties as to when title is to pass. "After all, the actual intent of the parties must be determined from the terms of the contract, the conduct of the parties, and all the circumstances of the case." Brown Lumber Co. v. Commissioner of Internal Revenue, 59 App.D.C. 110, 35 F.2d 880, 882.[7] And we think the parties in this case very clearly demonstrated their intention that property in the goods was to pass upon delivery at Perryville, Maryland, and not before.

■ Appellant argues that the Tompkins Company should be deemed to have accepted the broken pipe by virtue of having retained it for an unreasonable length of time "without intimating to the seller that he has rejected them." Art. 83, Sec. 66. But since there never was a delivery under the contract we cannot see how there could have been an acceptance or retention. Neither title in nor possession of the merchandise ever passed to appellee, and so it cannot be charged with acceptance or retention.

■ Nor does liability arise from appellee's failure to place a formal claim for damages against the carrier. Appellee's theory as to transfer of title being correct, it had no obligation (and perhaps even no right) to claim damages for the breakage of material which still belonged to the shipper. And whatever the moral obligation to notify the vendor of the breakage, we see no legal basis for holding appellee liable for his failure to do so. It was not upon that theory that appellant's claim was based. It was a suit for merchandise delivered; and as we have seen, there never was a delivery, in fact or in law.

From our study of the evidence and the various contentions made by appellant we are satisfied the case was correctly decided.

Affirmed.

[4] Swift & Co. v. Hocking Valley R. Co., 243 U.S. 281, 37 S.Ct. 287, 61 L.Ed. 722; Grissinger v. United States, 77 Ct.Cl. 106; Lyon v. Robert Garrett Lumber Co., 77 Kan. 823, 92 P. 589.

[5] International Co. v. Sun-Maid Raisin Growers, 146 Md. 608, 127 A. 393; Standard Casing Co. v. California Casing Co., 233 N.Y. 413, 135 N.E. 834; Neimeyer Lumber Co. v. Burlington & M. R. R. Co., 54 Neb. 321, 74 N.W. 670, 40 L.R.A. 534.

[6] As indicated above, there were two separate points of origin neither of which was disclosed to the purchaser in advance.

[7] See also the recent case of Nudleman v. Globe Varnish Co., 7 Cir., 114 F.2d 916.